# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **JULIA RUSSO, Individually and on Behalf of All Others Similarly Situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **Case No. 3:20-cv-00820** <br> **Judge Aleta A. Trauger** |
| **MOORE INGRAM JOHNSON & STEELE, LLP,** | ) ) ) | |
| **Defendant.** | ) ) | |

## MEMORANDUM

This is a wage and hour case brought as a collective action pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and as a putative class action under Tennessee common law. (*See* Collective and Class Action Complaint, Doc. No. 1.) Now before the court is plaintiff Julia Russo's Motion to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) (Doc. No. 18), which Moore Ingram opposes (Doc. No. 22), and in further support of which the plaintiff filed a Reply (Doc. No. 23).

Nearly two months after the briefing on that motion was completed, Russo filed a document styled as a Supplement Regarding Plaintiff's Motion to Facilitate Notice, which she docketed as a motion. (Doc. No. 32.) The defendant's opposition to the Supplement, which was not docketed as a motion, is styled as its Motion to Strike/Disregard or, in the Alternative, Response in Opposition to Plaintiff's Supplement Regarding Motion to Facilitate Notice. (Doc. No. 33.)

The court construes the plaintiff's Supplement as a motion for leave to supplement. Having considered the documentation submitted therewith, the court will grant the plaintiff leave to

supplement and deny the defendant's Motion to Strike. However, for the reasons set forth herein, the plaintiff's Motion to Facilitate Notice, which the court construes as a motion for conditional certification of a collective action under the FLSA, will be denied.

## I.    FACTUAL BACKGROUND

According to the Collective and Class Action Complaint (Complaint), Moore Ingram is a full-service law firm that employs more than sixty attorneys and has a "dedicated staff of support personnel." (*Id.* ¶ 16.) It is a Georgia limited liability partnership and has offices in Georgia, Tennessee, Kentucky, Florida, and Pennsylvania. (*Id.* ¶¶ 6, 13, 22; *see also* Doc. No. 1-1, at 2–3.) Russo was employed as a legal assistant by Moore Ingram from August 2018 until April 2020, at which time she began taking unpaid leave. (Doc. No. 1 ¶ 19.) Throughout her employment, the plaintiff worked at Moore Ingram's Brentwood, Tennessee office, but she "communicated with other employees . . . in other offices." (*Id.* ¶ 20.)

The plaintiff alleges that Moore Ingram "paid [her] a salary" for her work, and the Answer admits the truth of this statement. (Doc. No. 1 ¶ 25; Doc. No. 11 ¶ 25.) However, while Moore Ingram expressed to the plaintiff her rate of pay in terms of an annual amount when she was initially hired, her paystubs "reflected the number of hours the plaintiff was scheduled to work." (Doc. No. 1 ¶ 26.) Except when her rate of pay increased, she was paid the same amount in every paycheck, unless she had a day off for which she did not use paid time off. (*Id.* ¶ 27.) Thus, during one week when she worked four days instead of five due to unanticipated circumstances, she was paid four-fifths of her usual weekly pay for that week. (*Id.* ¶ 28.)

The defendant classified the plaintiff and all of its legal assistants as non-exempt under the FLSA. (*Id.* ¶¶ 30–31; *see also* Larkins Decl., Doc. No. 22-1 ¶ 8.) The plaintiff alleges that Moore Ingram also classified all of its other non-attorney support staff as non-exempt under the FLSA as well, and Moore Ingram agrees that "most, if not all, of its non-attorney support staff" is classified

as non-exempt. (Doc. No. 1 ¶ 32; Answer, Doc. No. 11 ¶ 32.) Moore Ingram did not require Russo to "clock in" or "clock out" upon arriving at or leaving the office and did not otherwise record Russo's actual time worked. (Doc. No. 1 ¶ 33.) Instead, the plaintiff was assigned to work a set schedule, from 8:30 a.m. until 5:00 p.m. from Monday through Friday, with a one-hour lunch break, totaling 37.5 hours per week. (*Id.* ¶ 34.)

Nonetheless, according to Russo, Moore Ingram "required, or, at the very least, permitted," Russo to begin work prior to 8:30, to work during her lunch break, and to work after 5:00 p.m., "to such an extent that Plaintiff regularly worked more than forty hours per workweek. (*Id.* ¶¶ 35, 36.) The plaintiff also claims that the defendant "was aware of [her] overtime work," in particular because the fact that she performed work outside her scheduled hours was "apparent from documents in Defendant's control," including from emails sent to other employees outside her scheduled work hours and key-card data the plaintiff believes was recorded each time the plaintiff arrived at work before 8:30 a.m. and used her key card to enter the building. (*Id.* ¶¶ 37–42.) In addition, attorneys for whom the plaintiff was assigned to perform work, including Chris Rowe and Ashley McGee, would see that the plaintiff was already at her desk when they arrived prior to 8:30 and occasionally requested that she complete work assigned toward the end of the day, knowing that doing so would require her to stay past 5:00 p.m. (*Id.* ¶¶ 43–45.) The plaintiff claims that other attorney employees would also observe her working past 5:00 p.m. (*Id.* ¶ 46.) Even though the plaintiff allegedly performed overtime work as a non-exempt employee under the FLSA, Moore Ingram never paid her overtime compensation for work in excess of forty hours in a given workweek. (*Id.* ¶ 47.)

The Complaint asserts that Moore Ingram "similarly paid salaries to other non-exempt Legal Assistants and other support staff and similarly failed to pay overtime compensation . . . to

those employees, who similarly performed overtime work." (*Id.* ¶ 48.) The plaintiff claims that other non-attorney support staff employed by Moore Ingram were similarly situated to her in that:

> (A) they were non-exempt employees entitled under the Fair Labor Standards Act to overtime compensation for overtime work, and were classified as such by Defendant, (B) they were paid a salary, (C) they worked more than 40 hours in one or more workweeks, (D) Defendant was aware of the overtime work, and (E) Defendant did not pay them overtime compensation for the overtime work.

(*Id.* ¶ 49.)

Russo also claims that the non-payment of overtime to her and other non-exempt non-attorney employees of Moore Ingram was "pursuant to a common scheme" of "scheduling such employees to work certain hours per week, not recording the actual times worked by employees, and then paying as if the employees had worked exactly as scheduled, despite Defendant knowing that employees regularly worked more than scheduled and more than 40 hours per week." (*Id.* ¶ 50.)

The plaintiff alleges that Moore Ingram's violation of the FLSA was "willful," particularly given that Moore Ingram advises its clients on how to comply with the FLSA, clearly knows how to do so, but did not itself practice what it preaches. (*Id.* ¶¶ 51–54.) In addition, she points to an email exchange between her and the firm's Administrative Partner in July 2020, in which she unsuccessfully sought permission to work remotely during the COVID-19 pandemic. In her email, she stated that she had long been an "exemplary employee," who frequently "arriv[ed] at work in advance of the work day by as much as an hour and le[ft] late some days." (*Id.* ¶ 56; *see also* Doc. No. 1-3, at 3.) In his response, the Administrative Partner, Bill Johnson, remarked: "To the extent you are working overtime without prior approval by myself, the Administrative Partner, that is prohibited. Please do not continue such behavior; if you do, you may be subject to disciplinary action up to, and including, termination." (Doc. No. 1 ¶ 57; *see also* Doc. No. 1-3, at 2.)

The plaintiff asserts that Johnson's statement was both false—because Moore Ingram had constructive knowledge through its attorney supervisors that non-attorney staff regularly performed overtime work without Johnson's approval and without overtime compensation—and "significant," insofar as it signaled "Defendant's awareness of its obligation to pay overtime compensation for Plaintiff's overtime work." (Doc. No. 1 ¶¶ 59, 60.) The plaintiff claims that, following her email to Johnson stating that she regularly worked overtime, the defendant could have referred to documents within its possession and to which it had "easy access" in order to determine the truth of her assertion and whether the defendant was, as a result, obligated to pay the plaintiff overtime compensation. (*Id.* ¶ 61.) Further, following the defendant's receipt of the plaintiff's email stating that she regularly performed overtime work, the defendant "took no action . . . to change its policy relating to the tracking of time worked by its non-exempt employees." (*Id.* ¶ 63.)

Based on the allegations that the defendant failed to properly pay her and other non-exempt employees overtime compensation, the plaintiff asserts a claim against Moore Ingram for violation of the FLSA on her own behalf and on behalf of a putative "collective," made up of all other non-attorney support staff employees of Moore Ingram. Specifically, she asserts that (1) the FLSA requires that all covered employees be compensated for all hours worked in excess of forty in one week at the rate of one and one-half times their regular rate of pay; (2) Moore Ingram is an "employer" as the term is defined by 29 U.S.C. § 203(d) and subject to the FLSA's wage requirements; (3) Moore Ingram engaged in interstate commerce within the meaning of 29 U.S.C. § 203; (4) Russo and the other members of the putative collective were non-exempt from the FLSA's requirements; (5) Russo and the other members of the putative collective worked more than forty hours in one or more workweeks without overtime compensation and are entitled to be

paid overtime compensation, under 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112; and (6) Moore Ingram knowingly and willfully failed to pay overtime compensation to non-exempt employees who worked in excess of forty hours per workweek and failed to create and preserve records pertaining to the hours worked by its employees. (Doc. No. 1 ¶¶ 90–99.)[1]

The plaintiff filed her Complaint on September 24, 2020. On January 15, 2021, in accordance with the Initial Case Management Order, the plaintiff filed her Motion to Facilitate Notice, which effectively seeks conditional certification of an FLSA collective. (*See* Doc. No. 16 § H.) In conjunction with her Motion, the plaintiff also filed her own Declaration (Doc. No. 18-2) and that of Penelope Branson, an employee of plaintiff's counsel (Doc. No. 18-3), a proposed form Notice of Collective Action Lawsuit (Doc. No. 18-4), and proposed form Consent to Become Party Plaintiff (Doc. No. 18-5).

The plaintiff states in her Declaration that, when she first began working for Moore Ingram, she went to the firm's Knoxville office for orientation and training. She was told by the office manager at that time that her scheduled hours would be from 8:30 a.m. to 5:00 p.m., with a one-hour lunch break, and that she would "be paid based on this schedule." (Doc. No. 18-2 ¶ 3.) She discovered after she began working, however, that, "because of the heavy workload and [her] desire to be a good worker," she began coming into the office and starting work before 8:30 a.m. on a regular basis, working at her desk through lunch or taking less than an hour break, and occasionally working past 5:00 p.m. (*Id.* ¶ 4.) The amount of time by which she exceeded her scheduled 37.5 hours "often exceeded 2.5 hours per week," meaning that she "often actually performed work in excess of 40 hours per week" for which she was not paid. (*Id.* ¶ 6.) In addition,

---

[1] The Complaint also purports to bring a class action under Rule 23 of the Federal Rules of Civil Procedure for violation of state law pertaining to the non-payment of wages for all hours worked. Certification of a Rule 23 class is not yet at issue in this case.

when she arrived early, worked through lunch, or stayed late, "supervising attorney employees of Defendant would regularly also be present at the office and see [her] working during these times." (*Id.* ¶ 5.)

When she was attempting to determine how much overtime she had worked while employed by Moore Ingram, Russo "realized" that she had a Google Maps application on her mobile telephone that had recorded and preserved the location of her phone for the past several years, thus capturing the date and time of each of her arrivals at, and departures from, the defendant's office during her employment. She has reviewed this data and believes it to accurately reflect her coming and going from the office. She also avers that she was in the habit of taking her cell phone with her whenever she left the office. (*Id.* ¶¶ 7–8.)

The plaintiff asserts that she "observed other non-attorney support staff employees of Defendant's Brentwood, Tennessee office . . . also arriving at Defendant's office prior to the scheduled beginning of their workday, working through lunch (or taking a lunch that was less than one hour), and/or working after the scheduled end of their workday." (*Id.* ¶ 10.) "Supervising employees . . . were regularly present when these employees were performing this additional work." (*Id.* ¶ 10.) Based on the "frequency" with which this "additional work was being performed," the plaintiff believes that "other non-attorney support staff at the Brentwood, Tennessee office worked more than 2.5 hours of uncompensated work, in addition to their 37.5 hours of compensated work, and therefore performed work in excess of 40 hours in one or more workweeks without being paid overtime compensation." (*Id.* ¶ 10.)

Penelope Branson's Declaration attests to her having reviewed the Google Maps data from the plaintiff's mobile telephone and created a spreadsheet reflecting that data, which shows that the plaintiff's telephone—and, presumably, the plaintiff—was in the defendant's office more than

forty hours per week for most of the weeks during which the plaintiff worked for Moore Ingram. (*See* Doc. No. 18-3, at 8–20.)

Other than her own (Doc. No. 1-4), the plaintiff has not filed any Consent to Become Party Plaintiff executed by any other current or former Moore Ingram employee, nor has she filed the declaration or affidavit of any other current or former non-attorney Moore Ingram employee, at any of its offices, attesting to having ever worked more than forty hours during any workweek without overtime compensation.

Along with its Response in Opposition to the Plaintiff's Motion to Facilitate Notice, the defendant filed several Declarations of its own, including those of Catherine Larkins, Lindzi Pipkin, and Chris Rowe. (Doc. Nos. 22-1, 22-2, 22-3.) Larkins attests that she has been Moore Ingram's Human Resources Manager, working primarily from its Marietta, Georgia office, since 2014. (Doc. No. 22-1 ¶¶ 2, 3.) According to Larkins, as relevant here, Moore Ingram employs non-attorney staff to assist its attorneys in serving the firm's clients. (Doc. No. 22-1 ¶ 6.) In its Brentwood, Tennessee office, it employs legal assistants to answer telephones, open mail, receive faxes and email, manage attorneys' calendars and scheduling, enter attorneys' billable time, and prepare and edit legal documents and letters. (*Id.* ¶ 7.) It also employs one file clerk in the Brentwood office, who answers the telephone, orders office supplies, manages off-site storage, and organizes, maintains, and closes files. (*Id.* ¶ 7.) Other offices, but not the Brentwood office, employ non-attorney staff as paralegals, copy center clerks, receptionists, a medical records clerk, an administrative assistant, accounting department staff, and IT staff. (*Id.*) Larkins substantiates Russo's assertion that legal assistants are classified as non-exempt for purposes of the FLSA. (*Id.* ¶ 8.)

Because legal assistants are non-exempt from overtime requirements, Moore Ingram maintains a policy governing overtime, which is set forth in its Employee Handbook. The 2017 version of the Handbook incorporates the following policy statement regarding overtime:

> *(This section applies solely to the non-exempt administrative/support staff.)*
>
> Absent special workload requirements, the secretarial and non-exempt administrative staff is expected to work from 8:30 A.M. until 5:00 P.M. Specific start and stop times will depend on the area of employment and will be communicated individually upon hire. However, the primary objective of this Firm is to serve its clients. To meet this objective, staff members are sometimes asked to work additional time to complete rush work.
>
> Every effort will be made to keep additional work requirements to a minimum, but when such additional work is necessary, the full cooperation of all employees will be expected.
>
> The standard work week is 37.5 hours, assuming one (1) hour lunch period each day. These hours allow a 2.5 hour cushion of available time prior to the necessity of working overtime. Any and all overtime must be approved, prior to working, by the Administrative Partner.

(Doc. No. 22-1 ¶ 9; *see also* Doc. No. 25 § 3.4, Moore Ingram Employee Manual, Revised Oct. 2017.)

When Moore Ingram hires new legal assistants, it "typically refers to the approximate annual amount of pay a legal assistant is likely to receive based on an hourly rate of pay and working 40 hours per week, as opposed to an hourly amount." (*Id.* ¶ 18.)

Without pointing to any other specific provision of the Employee Manual, Larkins avers that the firm "requires employees to report any and all overtime that is worked" and to "seek approval before working in excess of 40 hours in any one workweek" and that employees who violate these policies may be subject to disciplinary action. (Doc. No. 22-1 ¶ 10.) Larkins claims that Moore Ingram also has a "policy stating that all employees will be compensated for all hours worked, including for any overtime hours worked in excess of 40 hours in a workweek." (*Id.* ¶ 11.) She further states that all legal assistants are expected to work 37.5 hours per workweek, on a

fixed schedule, with the exception of two legal assistants who work modified part-time schedules. (*Id.* ¶¶ 14–16.)

Despite the fact that they are expected to work 37.5 hours per week, Moore Ingram pays its legal assistants based on a forty-hour work week, meaning that they are paid for working forty hours even though they are only scheduled to work 37.5 hours and even if they only actually work 37.5 hours per week. (*Id.* ¶¶ 17, 19.) The decision to pay its legal assistants for forty hours of work per week "stems from the practical recognition that an assistant might sometimes, but infrequently, need to come in early or stay a few minutes late or may need to take less than an hour for lunch in order to meet client needs." (*Id.* ¶ 20.) Nonetheless, according to Larkins, the firm "makes it clear to every legal assistant, through orientation, training, and its policies, that assistants are not to work overtime, in excess of 40 hours in a workweek, without express, prior approval by a supervising attorney." (*Id.* ¶ 21.) She states: "If a legal assistant fails to obtain prior approval for overtime, the assistant would still be paid for such overtime at time and a half the normal rate of pay." (*Id.* ¶ 22.)

Although legal assistants are expected to work a fixed schedule, Moore Ingram accords legal assistants some flexibility in their hours "in regard to making adjustments to their normal schedules" to accommodate doctor's appointments and other personal needs. (*Id.* ¶ 23.) For instance, an employee may ask, and be granted, permission to leave early one day but stay later the next day, rather than having to take sick leave or personal leave. (*Id.*) She claims that Moore Ingram does not track these deviations, other than through confirmation emails to the supervising attorney or office manager who approves the scheduling change. (*Id.* ¶ 25.)

According to Larkins, Russo never sought or obtained Larkins' approval to work overtime, "nor was she ever requested to work overtime." (*Id.* ¶ 27.) Larkins is "not aware of anyone else at Moore Ingram who gave Ms. Russo approval or requested that she work overtime." (*Id.*) However,

Russo did request to leave early or otherwise adjust her work schedule on a number of occasions. (*Id.* ¶ 28; *see also* Sept. 26, 2018–Feb. 27, 2020 email exchanges documenting the plaintiff's requests and her supervising attorney's approval for changes to her schedule, Doc. No. 23-3.)

According to her Declaration, Lindzi Pipkin has been employed as a legal assistant in Moore Ingram's Brentwood office since October 2019. (Doc. No. 22-2 ¶ 2.) She is paid at the rate of $16.83 per hour for a forty-hour work week, which corresponds to an annual salary of approximately $35,000. When she began working at Moore Ingram, her pay rate was discussed in terms of an annual salary, but she "understood [she] would be paid twice monthly based on a 40-hour workweek (excluding holidays or other days not worked)." (*Id.* ¶ 4.) Pipkin has "never worked more than 40 hours in any given workweek during [her] employment with Moore Ingram." (*Id.* ¶ 6.) However, she has occasionally requested and been permitted to come in early or leave late so she could arrive late or leave early on a different day. (*Id.*) She states that she is "not aware of any other legal assistants at Moore Ingram, at least in the Brentwood office, who have worked more than 40 hours in a workweek." (*Id.* ¶ 7.)

She also states that it has been her understanding, since beginning work at Moore Ingram, that she is not to work more than forty hours in a given week without approval from "a supervising attorney" but that, if she did work more, it would be her "responsibility to report [her] time to a supervising attorney so that [she] could be paid overtime pay for such work." (*Id.* ¶ 8.) She has also understood from the inception of her employment that working overtime without prior approval could result in disciplinary action, up to and including termination. (*Id.*)

Throughout her employment at Moore Ingram, Pipkin has been provided a one-hour lunch break. She occasionally eats at her desk and is aware of other legal assistants who eat at their desks. (*Id.* ¶¶ 9, 10.) Even if she eats at her desk, she does not work through lunch. She uses this time to

browse the internet, catch up on social media, socialize, and take care of personal matters. (*Id.* ¶ 10.)

Chris Rowe has worked as an attorney at Moore Ingram's Brentwood office since 2015 and was one of Russo's supervising attorneys. (Doc. No. 22-3 ¶¶ 2–4.) He states that he normally arrives at the Brentwood office well before 8:30 a.m. and is usually the person who unlocks the office door in the mornings. He also regularly works past 5:00 p.m. (*Id.* ¶ 5.) When Russo was employed at Moore Ingram, he regularly arrived at work before and left after she did, and he has no specific recollection of ever seeing Russo at her desk working before 8:30 a.m. or after 5:00 p.m. (*Id.* ¶¶ 6, 7.) He believes that, if she had stayed late while he was at the office, it would "stand out to [him]." (*Id.* ¶ 7.)

Rowe specifically avers that, during Russo's employment with Moore Ingram, she never sought or obtained his approval to work more than forty hours in any work week; he never asked her to work overtime; and he is not aware of anyone else asking her to work overtime or giving her approval to work overtime. (*Id.* ¶ 10.) He is aware that Russo, on occasion, requested and was granted permission to adjust her schedule to accommodate personal needs to leave early or arrive late. (*Id.* ¶ 11.)

With her "Supplement" (Doc. No. 32), the plaintiff introduced into evidence the entirety of the Defendant's Responses to Plaintiff's First Set of Discovery Requests (Doc. No. 32-1); the defendant's Form Time Sheet (Doc. No. 32-2); the plaintiff's paystubs for February 2019 and the first half of March 2019 (Doc. Nos. 32-3, 32-4, 32-5); and an Unemployment document completed by Moore Ingram, stating that the average number of hours worked by the plaintiff per week was 40 (Doc. No. 32-6, at 2). The plaintiff argues that, although discovery is not complete, this new information shows that (1) even though the defendant did not keep track of its non-exempt

employees' hours, it developed a form to be used for that purpose, and the Employee Manual includes a policy requiring non-exempt staff to keep track of their hours (*see* Doc. No. 25 ¶ 3.6); (2) no legal assistants at the Brentwood office worked a fixed schedule different from the 8:30 a.m. to 5:00 p.m. that the plaintiff was expected to work, which the plaintiff believes confirms her belief that, anytime she saw other legal assistants working before 8:30 a.m., working through lunch, or working past 5:00 p.m., they were working overtime; (3) the defendant's records confirm that it almost never paid overtime to support staff, as it identified only two legal assistants in its Marietta, Georgia office who were paid overtime in 2020 and none from 2017 through 2019; (4) the defendant's "own documents" show that it expected its employees to work "almost exactly forty hours per week," not 37.5 hours (Doc. No. 32, at 6).

## II.    LEGAL STANDARDS

The FLSA requires an employer to pay its employees a minimum wage for any hours worked, 29 U.S.C. § 206(a),[2] and an overtime wage of "not less than one and one-half times the regular rate at which [the employees are] employed" for all work in excess of forty hours per week, *id.* § 207(a)(1). In addition to individual actions for violations of its provisions, the FLSA authorizes collective actions to "be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Rule 23 of the Federal Rules of Civil Procedure. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell–*

---

[2] Covered employees must be paid a minimum wage of at least $7.25 per hour. 29 U.S.C. § 206(a)(1)(C).

*Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Once a collective action is certified, however, employees seeking to join the collective class must affirmatively opt into the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." However, the Sixth Circuit has held that "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584; *see also Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 267 (6th Cir. 2015) ("[P]laintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.").

Typically, although such a practice is not mandated by statute, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the proposed opt-in plaintiffs for purposes of certifying a collective action. *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien*, 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (internal quotation marks and citation omitted).

At the first stage, the plaintiff bears the burden of showing that the employees in the collective are similarly situated. *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 WL 1730318, at *3 (M.D. Tenn. April 10, 2008). At that point, "'the certification is conditional and by no means final.' The plaintiff must show that 'his position is similar, not identical, to the positions held by

the putative class members.'" *Comer*, 454 F.3d at 546–47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit cited approvingly the district court's finding that conditional certification "'need only be based on a modest factual showing,'" *Comer*, 454 F.3d at 547 (quoting *Pritchard*, 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results in 'conditional certification' of a representative class.'" *Comer*, 454 F.3d at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)).[3]

Although the required factual showing is "modest," it "cannot be satisfied simply by unsupported assertions." *Keenum v. Lott Enters., Inc.*, No. 2:14-cv-02504, 2014 WL 11369832, at *2 (W.D. Tenn. Nov. 25, 2014). The named plaintiff "must present some factual support for the existence of a class-wide policy or practice" that violates the FLSA. *Tyler v. Taco Bell Corp.*, No. 2:15-cv-02084, 2016 WL 2344229, at *3 (W.D. Tenn. May 3, 2016) (citation omitted). *See also Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004) (to meet the "modest factual showing" standard, "Plaintiffs must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]." (internal quotation marks and citation omitted)). Moreover, "[t]he fact that a defendant submits competing declarations will not as a general rule preclude conditional certification." *Keenum*, 2014 WL 11369832, at *2 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (explaining that plaintiffs may meet the lenient standard "by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary")).

---

[3] The court actually held, however, that it did not have jurisdiction to hear the appeal of the district court's decision to grant conditional certification, as it was not a final and irrevocable order. *Comer*, 454 F.3d at 548.

In short, "[a]t the notice stage, all that is required is substantial allegations supported by declarations, and once the plaintiff has met that burden, the case may be conditionally certified as a collective action, regardless of what exemptions the defendant wishes to assert at a later time." *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.

After discovery, the defendant may move for decertification of the conditional class. *See O'Brien*, 575 F.3d at 583; *Shabazz*, 2008 WL 1730318, at *3 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

## III. DISCUSSION

The motion here concerns the first of the two phases. The plaintiff argues generally that collective action certification is proper, because she has demonstrated through her Complaint and Declaration that Moore Ingram had a practice, "common to all of its Legal Assistants and other nonexempt hourly support staff," of paying its employees "based on a fiction that employees would work" a certain schedule, typically 8:30 a.m. until 5:00 p.m. with a one-hour lunch, and "paying such employees exactly 37.5 hours of compensation each and every week," despite the defendant's actual knowledge that "employees would work beyond their scheduled hours" and sometimes more than forty hours per week, "and its desire to avoid having to pay overtime compensation when that occurred." (Doc. No. 18, at 2, 13.)

In its Response in Opposition to the Motion to Facilitate Notice, the defendant argues that the plaintiff has failed to satisfy the admittedly lenient burden that applies at this stage of the

proceedings, because she has failed to allege the existence of any single, company-wide policy in violation of the FLSA, a common theory unifying the proposed collective, or any other basis for finding that members of the proposed collective are similarly situated. Alternatively, it argues that, if the court finds that conditional certification is warranted, the proposed scope of the collective should be substantially narrowed and the language of the proposed notice should be modified.

In her Reply, the plaintiff largely side-steps the defendant's arguments and instead continues to argue that the defendant's practice of scheduling employees to work 37.5 hours while actually expecting them to work forty hours per week is evidence of a common policy or practice in violation of the FLSA, that the defendant both "admits" that it paid the plaintiff a "salary" and that it classified her and other non-attorney employees as non-exempt, that the defendant admits that it did not maintain records or keep track of its non-exempt employees' hours, and that it admittedly did not comply with its own requirement that employees keep a record of their hours. She also contends that the defendant's factual arguments are internally inconsistent and unsupported and should generally be rejected. She specifically takes issue with Larkins' Declaration on the grounds that some of the statements therein are clearly not based on personal knowledge which, the plaintiff claims, would justify disregarding the Declaration in its entirety. She devotes a substantial amount of energy to arguing that the court should apply the "missing evidence rule" in considering the defendant's failure to engage with some of the assertions in her Complaint, and she contends that a collective defined as all of the defendant's non-exempt employees is warranted. (Doc. No. 23.)

In construing the evidence presented by the plaintiff, applying a lenient standard that requires only a modest factual showing, the court cannot find that the plaintiff has made the requisite "substantial allegations supported by declarations" that, if true, establish the existence of

substantially similar employees who have been subjected to an FLSA violation. *White*, 236 F.R.D. at 373. First, the plaintiff's invocation of the "missing evidence rule" is misplaced. That rule simply has no application here. The basic premise of the rule is that "[a]n inference may be drawn that withheld evidence would be unfavorable if it is relevant evidence that would properly be part of a case and is within the control of the party whose interest it would naturally be to produce it." 29 Am. Jur. 2d Evidence § 253 (citations omitted); *see also Rogers v. T.J. Samson Cmty. Hosp.*, 276 F.3d 228, 232 (6th Cir. 2002) ("When . . . a plaintiff is unable to prove an essential element of her case due to the negligent loss or destruction of evidence by an opposing party, . . . it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence." (quoting *Welsh v. United States*, 844 F.2d 1239, 1248 (6th Cir. 1988)). At this stage in the proceedings, however, the *plaintiff* bears the burden of showing that the employees in the collective are similarly situated, *Shabazz*, 2008 WL 1730318, at *3, and to do so *she* must "submit evidence establishing at least a colorable basis" for her claim that a class of similarly situated plaintiffs who have suffered an FLSA violation exists, *Olivo*, 374 F. Supp. 2d at 548. Again, that standard means that she must, at a minimum, present "substantial allegations supported by declarations" that, if proven to be true, would establish the existence of a group of similarly situated employees bound by a common policy that violates the FLSA. *White*, 236 F.R.D. at 373.

Second, the court finds that Russo has adequately alleged in the Complaint—and presented supporting evidence of these allegations in her Declaration—that she herself worked overtime and was not compensated for overtime work as required by the FLSA. She alleges that she worked more than forty hours per week on a regular basis, that the defendant knew or should have known

that she worked overtime, and that she was not paid overtime compensation in accordance with the FLSA. (*See* Doc. No. 1 ¶¶ 35–45; Doc. No. 18-2 ¶¶ 4–6, 12–13.)

However, the Complaint and the plaintiff's Declaration contain *no* specific factual allegations, drawn from Russo's personal knowledge or otherwise, regarding the working conditions of Moore Ingram employees at any office other than the Brentwood office. Even if the court assumes, as the plaintiff claims, that Moore Ingram had a company-wide policy of not keeping track of non-exempt employees' hours, of scheduling them to work 37.5 hours per week, and of paying them to work 37.5 hours per week, while nonetheless expecting them to work 40 hours per week, and that, based on this policy, there was at least a possibility that some non-exempt employees would work in excess of forty hours per week without being paid overtime compensation, "proof of that policy or of conduct in conformity with that policy" would *not* "prove[] a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585.[4]

To be clear, an employer violates the FLSA if it either pays its employees less than the minimum wage for any hours worked or pays them less than one and a half times their regular rate of pay for any time worked in excess of forty hours. 29 U.S.C. § 206, 207. The plaintiff has not asserted a claim based on the failure to pay the minimum wage, nor has she actually argued that Moore Ingram's alleged practice of scheduling employees to work 37.5 hours per week and paying

---

[4] Insofar as the plaintiff is attempting to argue, in the alternative, that Moore Ingram's practice of not keeping track of its non-exempt employees' hours violates the FLSA and justifies conditional certification, she is mistaken. As the defendant points out, although the FLSA requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him," 29 U.S.C. § 211(c), it does not keeping create a private cause of action for alleged violations of this recordkeeping provision. *See Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002) (holding that, because only the Secretary has authority to enforce the recordkeeping requirements, the plaintiff was not entitled to damages for violation of those requirements (citing 29 U.S.C. § 217)).

them to work 37.5 hours per week, while actually expecting them to work forty hours per week, violates the FLSA. Nor could she. To violate the FLSA's minimum-wage requirement, the employees' regular wages for their work at Moore Ingram up to forty hours per week would have to fall below the required minimum wage. The Complaint contains no factual allegations that support an inference that any non-exempt employee, including the plaintiff, worked at any time for less than the federal minimum wage, regardless of whether the "regular" rate of pay under the FLSA was calculated based on working a 37.5-hour workweek or a forty-hour workweek.[5] The actual claim made in the Complaint is that the defendant's practice violated the FLSA's overtime-pay requirement, but the plaintiff has presented no evidence, aside from her unsubstantiated speculation, from which it might be inferred that any employees outside the Brentwood office actually worked overtime.

Russo also clearly does not have personal knowledge regarding the work habits of the single non-exempt employee at the Brentwood office who was a file clerk rather than a legal assistant. She offers no evidence regarding that individual's schedule or pay structure, nor does

---

[5] In her Reply, the plaintiff argues that "this illegal policy to which Defendant admits (relating to nonpayment for additional work between hours 37.5 and 40) is entirely consistent with, and supports, Plaintiff's position that Defendant has a similar common illegal policy applied to all of its non-exempt employees of not paying  for overtime (hours 40+) work based on the same policy of only paying non-exempt employees for 37.5 hours of scheduled work." (Doc. No. 23, at 1.) However, the only evidence in the record going to this point are three of the plaintiff's pay stubs, which indicate that, in February 2019, she received a "salary" of $960.97 twice a month, which was based on an hourly wage of $14.42 and an average of 86.67 hours per pay period. (Doc. Nos. 32-3, 32-4.) By March 2020, her wage had increased to $15.38 per hour. (Doc. No. 32-5.) In any event, the information on the paystubs indicates that she was paid for working forty hours a week regardless of whether she worked 37.5 hours, forty hours, or somewhere in between. However the hourly rate is calculated, the paystubs establish that Russo was at all times paid more than the federal minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, the alleged policy, as applied to her, does not violate the minimum-wage requirement of the FLSA. *Accord Scale v. KDE Equine, LLC*, 486 F. Supp. 3d 1089, 1101 (W.D. Ky. 2020) (finding no minimum-wage violation based on dividing the plaintiff-employees' base salary by the number of hours actually worked). And, again, she offers no evidence regarding what other employees were paid.

the plaintiff claim to have ever witnessed the file clerk working outside what she believes his or her scheduled hours should have been.

The question remains whether the plaintiff's bare allegations are sufficient to establish the existence of a group of similarly situated legal assistants who worked at Moore Ingram's Brentwood, Tennessee office under conditions that violated the FLSA. The plaintiff alleges in her Complaint, as described above, that Moore Ingram "similarly paid salaries to other non-exempt Legal Assistants . . . and similarly failed to pay overtime compensation . . . to those employees, who similarly performed overtime work." (Doc. No. 1 ¶ 48.) The plaintiff asserts that these other legal assistants were similarly situated to the plaintiff, insofar as they were non-exempt under the FLSA, worked more than forty hours in at least one workweek, and were not paid overtime compensation. The only factual support the plaintiff has offered regarding overtime work performed by other Brentwood legal assistants, however, is contained in one paragraph of her Declaration, which states, in its entirety, as follows:

> I observed other non-attorney support staff employees of Defendant's Brentwood, Tennessee office (where I performed my work after my initial training in Knoxville) also arriving at Defendant's office prior to the scheduled beginning of their workday, working through lunch (or taking a lunch that was less than one hour), and/or working after the scheduled end of the workday. Supervising attorney employees of Defendant were regularly present when these employees were performing this additional work. Based on the frequency that this additional work was being performed, I believe that other non-attorney support staff at the Brentwood, Tennessee office worked more than 2.5 hours of uncompensated work in addition to their 37.5 hours of compensated work, and therefore performed work in excess of 40 hours in one or more workweeks without being paid overtime compensation.

(Doc. No. 18-2 ¶ 10.)

While declarations from other employees who purport to have worked overtime without receiving overtime compensation is not essential to her case, the plaintiff must offer *some* factual basis for her presumption that the employees she witnessed working outside their normally

scheduled hours actually worked overtime. She has not done so. She does not state, for example, that she had conversations with other employees who told her that they worked overtime, nor does she indicate that she actually kept track of any other specific employee's hours. She claims that she saw support staff working outside their regularly scheduled hours with some "frequency," but she does not define that frequency. Her allegations, as a result, give rise only to further questions, not answers. For instance, did she witness the same employees frequently working before 8:30 a.m., after 5:00 p.m. or during lunch? Or did she simply frequently see random employees occasionally working into their lunch hour or working late? Did the off-schedule working hours of any one employee (other than herself) ever amount to more than 2.5 hours? Or did the employee who worked late one day leave early the next day to compensate? Was the employee she saw working through lunch one day simply making up for leaving early the previous day?

In short, the plaintiff's Declaration offers no actual evidence from which it might reasonably be inferred that the other employees whom the plaintiff supposedly saw working outside their normally scheduled hours actually worked overtime for which they were not compensated. *Accord Holmes v. Kelly Serv. USA, LLC*, No. 16-cv-13164, 2017 WL 3381415, at *7 (E.D. Mich. Aug. 7, 2017) (granting in part a motion to certify, but for a collective much smaller in scope than the plaintiff sought to certify, stating: "Holmes further testified that while she observed some agents appear to arrive early or stay late, she never saw these employees' time sheets or pay stubs, could not tell how long it took them to log onto or off of their computers each day, and could not say whether they logged on and off during their shift or before and after their shifts ended. Holmes can therefore say nothing about whether most of the agents who worked at the Hampton facility were or were not compensated for 'off-the-clock' work. She simply has failed to produce evidence that any alleged non-payment for 'off-the-clock' work extended beyond one

or two 'rogue' supervisors and the team members who reported to them."); *Combs v. Twins Grp., Inc.*, No. 3:16-CV-295, 2016 WL 7230854, at \*3 (S.D. Ohio. Dec. 14, 2016) (denying motion for conditional certification, stating: "Combs has failed to present sufficient evidence to support a finding that he and the other crew members are similarly situated, even under a more lenient evidentiary standard. Combs's declaration does not contain facts showing that he has actual or even constructive knowledge that his fellow crew members at Taco Bell worked overtime hours for which they were not paid. Such a showing could be made at this early stage by, for example, demonstrating that Combs's knowledge is based on first-hand observations or conversations with co-workers. Without a proper foundation, Combs's declaration is merely a restatement of the Complaint's allegations. Permitting this case to proceed as a collective action on so little evidence would effectively eliminate the requirement that plaintiffs must make at least a modest factual showing that they are similarly situated to obtain conditional certification." (internal citations and quotation marks omitted)). The court finds that the plaintiff has failed to satisfy her modest factual burden of showing that conditional certification is warranted.

In reaching this conclusion, the court has considered the plaintiff's additional material submitted with her Supplement, even though it was arguably filed inappropriately, without leave of court, and well outside the time for filing her motion for conditional certification.

## IV.    CONCLUSION

Having taken the supplemental evidence into consideration, the court will grant what it construes as the plaintiff's motion for leave to supplement her motion and deny the defendant's Motion to Strike. Nonetheless, for the reasons set forth herein, the court will deny the plaintiff's Motion to Facilitate Notice (Doc. No. 18), which the court construes as a motion for conditional certification of an FLSA collective action.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge