| | |
|---|---|
| JULIA RUSSO, Individually and on Behalf of All Others Similarly-situated, | ) ) ) **PROPOSED COLLECTIVE ACTION UNDER FLSA** ) |
| *Plaintiff,* | ) ) ) CASE NO. 3:20-CV-0820 |
| v. | ) ) |
| MOORE INGRAM JOHNSON & STEELE, LLP | ) **JURY DEMANDED** ) ) |
| *Defendant.* | ) ) |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Come Plaintiff Julia Russo, by and through counsel, and Defendant Moore Ingram Johnson & Steele, LLP, by and through counsel, and jointly move the Court for approval of their agreement to settle Plaintiff's FLSA claims in this matter: Plaintiff will release all of her claims against Defendant under the Fair Labor Standards Act in exchange for Defendant paying $5,000.00, of which $1,500.00 is to be paid on account of unpaid overtime compensation, $1,500.00 on account of liquidated damages, and $2,000.00 on account of Plaintiff's attorney's fees and litigation expenses.[1]

The parties represent that they have entered into the settlement in an arms-length transaction after Plaintiff (A) engaged counsel who investigated Plaintiff's claims, (B) initiated Plaintiff's claims in this matter, (C) sought conditional certification of a proposed collective action, which was denied by the Court, (D) sought discovery from Defendant to support Plaintiff's claims

---

[1] In addition to the agreement subject to this Court's approval to settle Ms. Russo's FLSA stated in the text, the parties have reached agreement to settle all of Ms. Russo's claims; this agreement provides for confidentiality, but the parties are presenting herein the amount allocated to Ms. Russo's FLSA claims.

(including seeking and reviewing emails sent by Plaintiff on Defendant's email system prior to and after Plaintiff's scheduled shift, as well as seeking documents relating to times Plaintiff "logged in" and "logged out" of Defendant's computer system (which Defendant asserted its computer system did not, due to the settings in effect at the time, generate during Plaintiff's employment)), (E) provided discovery responses, including relating to Defendant's proposed defenses, (F) investigated Defendant's asserted defenses (including Defendant's defense that Plaintiff was only scheduled to work 37.5 hours per work and would accordingly need to prove more than 2.5 hours of extra-scheduled work in order to assert overtime work had been performed but not compensated, and Defendant's defense that Plaintiff did not in fact perform work during the times Plaintiff asserted Plaintiff was working) and (G) mediated this matter with mediator Michael Russell (with Plaintiff's counsel attending in person and Plaintiff attending by Zoom).

After this process, the parties reached the settlement, which Plaintiff and Plaintiff's counsel believe is fair and a good resolution of Plaintiff's claims, and which the parties now ask the Court to approve.

## PROCEDURAL POSTURE AND SETTLEMENT TERMS

This matter was filed on September 24, 2020 by Plaintiff. Ct. Doc. 1. Plaintiff asserted that Plaintiff and similarly-situated employees were not paid for all of their work in excess of forty hours per week because Defendant had a policy of scheduling Plaintiff and other similarly-situated non-exempt hourly employees to work according to a scheduled shift, but also required or permitted employees to perform work in addition to their scheduled shift, including overtime work, but not paying for the overtime work. *Id.*

Defendant filed an Answer, denying that Plaintiff or any other employee performed uncompensated overtime work, and further denying that there were any individuals similarly-situated to Plaintiff. Ct. Doc. 11.

The Court entered an Order, setting a deadline for Plaintiff to file a motion for conditional certification. Ct. Doc. 16. Plaintiff filed a motion for conditional certification, requesting that the Court approve a notice be sent to other hourly support staff employees of Defendant. Ct. Doc. 18. Defendant responded, arguing that Plaintiff had not met Plaintiff's burden of establishing that other employees were similarly-situated to Plaintiff. Ct. Doc. 22.

The Court ruled that Plaintiff had not sufficiently proven that any employee other than herself had worked overtime and not been paid overtime compensation, and accordingly denied Plaintiff's motion for conditional certification. Ct. Doc. 39.

The parties engaged in written discovery; the parties jointly requested, and the Court approved, that the parties' time to take depositions be extended until after a mediation the parties had scheduled to attempt to resolve this matter. Ct. Doc. 65. After an extensive mediation, the parties reached the agreement they now request that the Court approve.

## ANALYSIS

As noted, the FLSA generally requires parties to submit a proposed settlement for approval. *See, e.g.*, *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-44-DJH, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016). In deciding whether to approve a settlement, the Court must first determine whether there is a bona fide dispute over liability or coverage. *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *1 (E.D. Ky. Oct. 23, 2008). If there is such a dispute, the Court must then determine whether the settlement fairly and reasonably resolves that dispute. *See id.* The Court also may review the reasonableness of the fees sought by Plaintiff' counsel (i.e., that the settlement's terms relating to payment to Plaintiff's counsel are not unfair to Plaintiff). Under the present circumstances, the parties' settlement should be approved on all of these accounts.

### I. There is a Bona Fide Dispute Between the Parties Regarding Whether Defendant is Liable At All, and, If So, in What Amount.

The purpose of the "bona fide" dispute requirement is to prevent employers from forcing employees to compromise their wage claims (i.e., accept in "settlement" less than they could recover through litigation) in circumstances where there is no actual dispute about whether the employee was owed overtime compensation. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 709-710 (U.S. 1945) ("[t]o permit an employer to secure a release [of a 29 U.S.C. § 216(b) liquidated damages claim] from the worker who needs his wages promptly will tend to nullify the deterrent effect which Congress plainly intended that Section 216(b) should have"). This prevents the employer from "contracting around" the requirements of the FLSA. *Barrentive v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate").

Here, the parties have a bona fide dispute. Plaintiff asserts she worked overtime for Defendant but was not paid overtime compensation. Ct. Doc. 1. Defendant entirely denies that Plaintiff worked overtime at all, asserting that, due to her schedule, she would have to work more than 2.5 hours of work beyond her regular 37.5-hour-per-week schedule to even begin to accrue any entitlement to overtime compensation; Defendant denies that Plaintiff ever did so. Ct. Doc. 8.

Thus, the employer is not "contract[ing] around" the FLSA by entering into the settlement, and the concerns relevant to the "bona fide dispute" requirement (relating to "settlements" initiated by the employer as a ruse to pay employees less than the FLSA requires in the absence of a dispute about liability) are simply not applicable. *Ritterbeck v. Akron Family Restaurant*, 2016 WL 6947018 at *1 (N.D. Ohio 2016) ("[i]n reviewing the settlement of a federal plaintiff's FLSA

claims, the district court must '"ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime'… The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA").

## II. The Settlement Terms are Fair and Reasonable.

Accordingly, in light of the parties' dispute, the next step is to determine whether the parties' proposed resolution of the dispute is reasonable. Courts determine whether an FLSA settlement is reasonable by examining a number of factors. Specifically, courts consider (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; and (5) the public interest in settlement. *Ritterbeck v. Akron Family Restaurant*, 2016 WL 6947018 at *1 (N.D. Ohio 2016), citing *Crawford v. Lexington-Fayette Urban Cnty,* 2008 WL 4724499, at *3 (E.D. Ky. 2008), *itself citing Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Here, the factors weigh in favor of approval. First, there is no fraud or collusion. Absent evidence to the contrary, no fraud or collusion should be presumed to exist. *Ross*, 2016 WL 7320890, at *3. There is no such evidence in this case. To the contrary, the parties reached a settlement only after Plaintiff initiated litigation against Defendant and the parties vigorously contested the validity of Plaintiff's claims and Defendant's defenses.

Further, the amount provided in the settlement reasonably compensates Plaintiff for her claims asserted in this case. Even more specifically, Plaintiff earned an hourly rate of $14.42 to

$15.38 per hour, Ct. Doc. 32-3 through 32-5, and therefore would have earned an overtime rate of pay of 1.5 times the base rate: $21.63 through $23.07 per hour.[2]

The settlement pays Plaintiff $1,500.00 for unpaid overtime, which represents approximately 67.1 hours of overtime work, assuming the pay would occur at the midpoint of the range (an overtime rate of $22.35)[3]

Plaintiff worked for Defendant for approximately 20 months, from August, 2018 through April, 2020. Accordingly, the settlement represents payment for an average of 3.35[4] hours per month or .78 hours (roughly 47 minutes)[5] of overtime work per week throughout the entire tenure of Plaintiff's employment.

Importantly, both math and the parties agree that, in order for Plaintiff to recover overtime compensation at all, the Plaintiff must first establish that she worked 2.5 hours of overtime per week beyond the 37.5-hour schedule Defendant acknowledges Plaintiff generally[6] worked. Accordingly, the settlement pays Plaintiff the same amount as she would receive if she proved at

---

[2] As the Court recognized, Ct. Doc. 39 at 20, fn 5, the parties disputed whether the "regular rate" would be based on Plaintiff's "salary" being divided by 37.5 or 40 hours per week. The hourly figures presented in the analysis of the text are those noted by the Court in its previous ruling. *Id.* The parties respectfully submit that the settlement is reasonable and should be approved under either "regular rate" theory.

[3] Plaintiff received a pay increase in January, 2020, and therefore, much of the pay would have been earned in 2018 and 2019 at the lower rate, rather than during 2020 at the higher rate. The amount of overtime represented by the settlement actually would be slightly higher than the 67 hours reflected.

[4] That is, 67.1 total overtime hours divided by 20 months of employment.

[5] That is, 3.35 hours per month divided by 4.3 weeks per month.

[6] Defendant asserts that Plaintiff did not work a full schedule in some weeks. See Ct. Doc. 22-1 at ¶ 28. If Defendant can show Plaintiff left early on a given day, for instance, Plaintiff would have to establish that she worked that much more time beyond her schedule in order to establish an entitlement to overtime in a given week. Similarly, since holiday pay and paid time off does not count toward eligibility for overtime compensation, Plaintiff would either not be able to recover at all or would have to establish proportionally more "off the clock" work in weeks containing these types of leave.

trial that, in addition to working the regularly-scheduled 37.5 hours, she worked an additional 3.28[7] hours per week (or over 39 minutes per day), every week throughout her tenure. Of course, Defendant denies that Plaintiff worked any amount beyond her schedule, let alone an average of more than 39 minutes per day.

In addition to paying for this amount of overtime, the settlement further provides for Defendant to pay an additional $1,500.00 on account of liquidated damages. Defendant disputes that it would have been liable for liquidated damages, but recognizes that FLSA caselaw reflects that liquidated damages awards are the norm, and that the burden of establishing a "good faith" exception under 29 U.S.C. § 260 falls on the defendant/employer, not on the employee. *See Acosta v. CPS Food, Ltd.*, 2017 WL 5157238 (N.D. Ohio Nov. 3 2017) (burden to avoid liquidated damages rests on employer, and defendant failed to show it took affirmative steps to determine legality of its actions).

In summary, the settlement provides Plaintiff with substantial benefits on account of her FLSA claims. In light of this analysis, and based on Plaintiff's counsel's review of the litigation as a whole, Plaintiff's counsel has concluded that the settlement represents a fair compromise of Plaintiff' position and a good result for Plaintiff. *See Barr v. Cleveland Metroparks*, No. 1:17-CV-1390, 2018 WL 692025, at *2 (N.D. Ohio Feb. 2, 2018) (approving settlement where it was "the result of arms-length negotiations between parties that were represented by able counsel").

The complexity, expense, and likely duration of the litigation also weigh in favor of approval. *See Cooper v. Winking Lizard, Inc.*, No. 1:16CV1513, 2017 WL 4465759, at *3 (N.D. Ohio Oct. 4, 2017) (approving pre-certification settlement of FLSA claims in part because of "the factual and legal complexity of the case"). If the case were to proceed, Plaintiff and Defendant

---

[7] That is, the 2.5 hours needed to get from the 37.5 regular schedule to the 40 hour threshold plus the .78 hours per week compensated through the settlement.

would have to litigate numerous issues. While such litigation could increase the amount of Plaintiff' reasonable attorney's fees, Plaintiff would still only herself receive relief of the type she would herself receive through the settlement (that is, unpaid overtime compensation and liquidated damages).

Further, the litigation has advanced to a point at which Plaintiff would be required to make significant outlays of litigation-related expenses to proceed. Specifically, but for the settlement, Plaintiff would have needed to expend substantial sums relating to depositions, which were scheduled to occur in August, 2022 until the parties reached at the July 27 mediation the settlement which they now request the Court approve. In addition, both Plaintiff and Plaintiff's counsel has also considered that there is value to Plaintiff in avoiding the time and emotional investment Plaintiff would have had to expend in continuing the litigation. Importantly in that regard, Plaintiff has moved to New England, and would have to expend significant time and expense to proceed to trial (the parties also had an imminent dispute about whether or not Plaintiff should have to travel to Tennessee for her deposition, which would be mooted by the settlement) relating to travel. Further, Plaintiff wants to minimize, as far as practicable, potential exposure to COVID, and the settlement avoids the potential of Plaintiff having to travel to Tennessee twice relating to her FLSA claims.

And even if Plaintiff did prevail, the litigation would further delay Plaintiff' recovery. If the Court did not approve the settlement, and Plaintiff proceeded with this action until recovery, the inevitable delays associated with litigation (including potential appeal) would mean that actual payment to Plaintiff could be months, or even years, from now. The settlement, in contrast, provides for Plaintiff's prompt receipt of payment following Court approval with respect to Plaintiff' claims brought in this action. *See Cooper v. Winking Lizard, Inc.*, No. 1:16CV1513,

2017 WL 4465759, at *3 (N.D. Ohio Oct. 4, 2017) (approving settlement in part because "'the certainty and finality that comes with settlement also weighs in favor of' approving a fair and reasonable settlement"), quoting *Dillworth v. Case Farms Processing*, No. 5:08-cv-1694, 2010 WL 776933, at *6 (N.D. Ohio 2010).

Finally, the likelihood of success favors approval. Litigation is inherently risky, and the settlement provides the parties with certainty. Plaintiff could theoretically receive (through errors in litigation, or all of the other various uncertainties of litigation) less at a trial, or more. However, on balance, the settlement reasonably approximates a result that both parties could alternatively view as a "glass-half-full" or a "glass-half-empty" if it had been awarded at trial – overtime compensation, but not the full amount claimed by Plaintiff. Indeed, while it would be appropriate for this Court to approve this Settlement even if it could not predict which party would prevail at trial, *See Barr*, 2018 WL 692025, at *2 ("[w]hile the Court is not in a position to assess the likelihood of success on the merits, as the case was still in the early stages when settlement was reached, the Court finds that the other relevant factors weigh in favor of approving the settlement."), the award to Plaintiff of the amount proposed to be paid through the settlement is substantial, and supports approval of the settlement as reasonable.

### III    Plaintiff' Counsel's Fee is Reasonable and Should Be Approved.

Finally, in an action under 29 U.S.C § 216(b), the award of attorney's fees, which is mandatory, *Ross*, 2016 WL 7320890, at *5, should be approved. The amount of those fees, however, is within the Court's discretion. *Id.* The fee must be determined to be reasonable (i.e., that it does not excessively compensate counsel at the expense of the employee). *Id.* A reasonable fee is one that can attract competent counsel but does not produce windfalls. *Id.*

Here, the parties' settlement provides Plaintiff' counsel with $2,000.00, which effectively amounts to attorney's fees of $1,600.00 and reimbursement of advanced expenses in an amount of $400.00 (the Court's filing fee, which was advanced by counsel) from the total being paid by Defendant on account of Plaintiff' claims of $5,000.00.

The contingency fee agreement between Plaintiff and Plaintiff's counsel provides that, upon a recovery, Plaintiff's counsel will be reimbursed for advanced expenses, and will also receive "the greater of" 40% of the total recovery or "the amount expressly awarded by a court or arbitrator as attorney's fees under any statute, contract provision, or legal theory allowing the recovery of attorney's fees." Here, Plaintiff's counsel is receiving less than the amount provided for in the contingency fee agreement, as Plaintiff's counsel is receiving 40% *minus* advanced expense, rather than reimbursement of advanced expense *plus* 40% of the total recovery.

Plaintiff's counsel submits that the proposed fee is appropriate for the Court to award through approval of the settlement under the circumstances, including the substantial amount of work performed and the recovery obtained.

"The Sixth Circuit has permitted fee awards ranging from 10 to 50 percent." see *In re: Amazon.com, Inc. Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, No. 228 in United States District Court for the Western District of Kentucky, No. 3:14-md-02504-DJH (2016), *citing Bowling v. Pfizer*, 102 F.3d 777, 780 (6th Cir. 1996). (affirming fee award of 10 percent of $102 million common fund); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 U.S. Dist. LEXIS 174, at *10-11 (S.D. Ohio March 9, 2007) (finding 29 percent fee to be "modest and . . . below what is often awarded by district courts in th[e Sixth] Circuit" and citing various cases in support of that conclusion). Here, the award to Plaintiff' counsel of fees

($1,600.00) of approximately 32% of the total settlement ($5,000.00) is appropriate and reasonable.

Further, the amount of counsel's fee is also reasonable, when assessed in light of a lodestar analysis. The parties request that the Court take judicial notice from the filings in this case that Plaintiff' counsel has expended substantial time, including in connection with a detailed complain, seeking conditional certification, propounding and responding to written discovery, travelling to Brentwood to attend mediation, and preparing the instant motion, [8] such that Plaintiff's counsel's fee, calculated on a lodestar basis, would considerably exceed the $1,600.00 Plaintiff's counsel is receiving, including at the hourly rate of $375.00 attorney Foster would seek for his time.[9]

Finally, Plaintiff' counsel submits that, given that counsel took the representation on a contingency fee basis, which enabled the representation to proceed, a reasonable lodestar multiplier for the risk associated with this type of representation would be appropriate. *See In re: Amazon.com, Inc. Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, No. 228 in United States District Court for the Western District of Kentucky, No. 3:14-md-02504-DJH (2016) ("[a] multiplier above 1 is reasonable in a contingent-fee case, and 'most multipliers are in the relatively modest 1-2 range'"; approving award equivalent to 1.47 multiplier

---

[8] Of course, there will be a modest amount of additional work after submission of this motion in connection with ensuring the complete administration of the settlement, if approved.

[9] Defendant does not take a position on Plaintiff's counsel's hourly rate, but does ask the Court to approve the settlement. Plaintiff's counsel asserts that awarding his time at a rate of $375.00 per hour would be reasonable. The Court is familiar with similar, and higher, rates charged for similar representation of employees in FLSA matters pending before this Court. A declaration of attorney Bernard Mazaheri, prepared in early 2019 in connection with another FLSA matter pending in the United States District Court for the Western District of Kentucky, supported an award of Plaintiff's counsel's time at the rate of $375.00 per hour. See Ct. Doc. 84-1 in *Rogers v. The Webstaurant Store, Inc.*, United States District Court for the Western District of Kentucky, No. 4:18-cv-00074. The dispute relating to the undersigned's hourly rate in *Rogers* was mooted by a subsequent settlement. The United States District Court for the Western District of Kentucky later approved the undersigned's fees at $375.00 per hour in granting a default judgment against a defendant in a separate FLSA case. See Ct. Docs. 101-3, 106 in *Gerry v. Lin.*, No. 4:18-cv-10 (W.D.KY. 2020).

where lodestar analysis used as cross-check), *quoting Newberg on Class Actions* § 15.87 (5th ed. 2016). A particular risk here was one that in fact materialized: that counsel would initiate Plaintiff's FLSA claims as part of a proposed collective action, only to have the Court determine that the matter was not appropriate to proceed as a collective action. The potentiality of a lodestar multiplier makes the award to Plaintiff's counsel actually sought to be approved that much more reasonable to Plaintiff – rather than demanding Plaintiff's proportionate share of the proceeds being paid by Defendant be reduced by having fees calculated on a lodestar and multiplier basis, Plaintiff's counsel has agreed to payment of 32% of the settlement as fees.

In summary, if there were not a settlement, and Plaintiff proceeded and prevailed (which Defendant does not concede would be the appropriate result), an appropriate award against Defendant for Plaintiff' counsel's fees for the work performed to date would exceed the award to counsel of $1,600.00 in fees and $400.00 for reimbursement of advanced expenses provided for in the settlement, and approval of these fee amounts is reasonable and fair to Plaintiff. The fees sought would not in any way be excessive or unfair to Plaintiff.

## CONCLUSION

For all these reasons, the parties jointly move that the Court approve the parties' settlement.

Respectfully submitted:

/s/ Mark N. Foster
Mark N. Foster, BPR # 023626
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff*

/s/ Lauren Paxton Roberts w. permission by Mark N. Foster
Lauren Paxton Roberts
STITES &HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 782-2200
lauren.roberts@stites.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing motion was served on opposing counsel of record, Lauren Paxton Robertsand Chadwick A. McTighe, via the Court's CM/ECF system on August 8, 2022.

/s/ Mark N. Foster
Mark N. Foster